UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>)<br>      Plaintiff, )<br>)<br> v. )<br>)<br>S. ERIC MARHSALL, )<br>)<br>      Defendant )<br>_____) | Case No. 3:18-cr-138 JD |

**DEFENDANT MARSHALL'S EMERGENCY MOTION
FOR RELEASE ON PANDEMIC/HEALTH GROUNDS (*Expedited*)**

Comes now the defendant, Sven Marshall, by and through his counsel Donald J. Schmid, to move this Court for an order allowing his release on bond and other conditions because of the coronavirus pandemic, his specific vulnerable condition. The defendant requests an expedited consideration of this matter.

## Introduction

Defendant moves the Court for an order granting his release. Sven Marshall, who is a defendant currently detained at the St. Joseph County Jail, is within the group of people the Centers for Disease Control and Prevention ("CDC") has categorized as most-at-risk for contracting COVID-19, a dangerous illness spreading rapidly across the world, throughout the United States, and within northern Indiana. The Bail Reform Act provides for the "temporary release" of a person in pretrial custody "to the extent that the judicial officer determines such release to be

1

necessary for preparation of the person's defense or for another compelling reason." 18 U.S.C. § 3142(i). The health risk to Sven Marshall because of his age and given the conditions at the St. Joseph County Jail, as described more below, necessitates his temporary release on bail until this pandemic has ended. The defendant can live at home with his mother and can be monitored through GPS-location equipment.

## Factual Background

### *Changed Circumstances: COVID-19 Outbreak*

As of March 13, 2020, the new strain of coronavirus which causes COVID-19, has sickened more than 142,100 people, according to official counts. As of Friday afternoon Marc 13, 2020, at least 5,381 people have died, including 2,201 outside of mainland China.[1] On March 11, 2020, the World Health Organization officially classified COVID-19 as a pandemic.[2] President Trump today declared a national emergency as a result of the pandemic.[3] Governor Cuomo of New York declared a State of Emergency on March 7, 2020.[4] Mayor de Blasio declared a State of Emergency in New York City yesterday on March 12, 2020, and banned gatherings of over 500 people.[5] Governor Holcomb of Indiana declared a public health

---

[1] *Coronavirus Map: Tracking the Spread of the Outbreak*, The New York Times (March 12, 2020), *at* https://nyti.ms/2U4kmud (updating regularly).
[2] *WHO Characterizes COVID-19 as a Pandemic*, World Health Organization (March 11, 2020) *at* https://bit.ly/2W8dwpS.
[3] https://www.msn.com/en-us/news/us/government-coronavirus-response-trump-declares-national-emergency-test-likely/ar-BB119yq0?ocid=spartandhp
[4] *At Novel Coronavirus Briefing, Governmor Cuomo Declares State of Emergency to Contain Spread of Virus*, New York State (March 11, 2020) *at* https://on.ny.gov/2TKzIoz.
[5] *DeBlasio Declares State of Emergency in NYC, and Large Gatherings Are Banned*, New York Times (March 12, 2020)

emergency on March 6, 2020.[6]

The CDC has issued guidance that individuals at higher risk of contracting COVID-19—adults over 60 years old and people with chronic medical conditions—take immediate preventative actions, including avoiding crowded areas and staying home as much as possible.[7] With confirmed cases in northern Indiana that indicate community spread of the deadly and easily transmitted virus, it is imperative to take every needed action to protect vulnerable populations and the community at large.

### *Conditions of Confinement and Spread of Coronavirus*

Conditions of pretrial confinement create the ideal environment for the transmission of contagious disease.[8] Inmates cycle in and out of jail and BOP detention pretrial facilities from all over the world and the country, and people who work in the facilities leave and return daily, without screening.[9] Incarcerated people have poorer health than the general population, and even at the best of

---

[6] https://www.wdrb.com/news/indiana-confirms-case-of-coronavirus-declares-public-health-emergency/article_92834a1e-5fbd-11ea-b311-b7179ddb59bd.html

[7] *People at Risk for Serious Illness from COVID-19*, CDC (March 12, 2020) *at* https://bit.ly/2vgUt1P. See also https://www.cnn.com/2020/03/12/opinions/coronavirus-prison-population-precautions-jones-jackson/index.html and https://www.cdc.gov/coronavirus/2019-ncov/specific-groups/high-risk-complications.html#who-is-higher-risk

[8] Joseph A. Bick (2007). Infection Control in Jails and Prisons. *Clinical Infectious Diseases* 45(8):1047-1055, *at* https://doi.org/10.1086/521910. See also https://www.npr.org/2020/03/13/815002735/prisons-and-jails-worry-about-becoming-coronavirus-incubators

[9] https://www.mercurynews.com/2020/03/13/coronavirus-inmates-quarantined-at-santa-clara-county-jail-after-defense-attorney-tests-positive/

times, medical care is limited in federal pretrial detention centers and local jails.[10] Many people who are incarcerated also have chronic conditions, like diabetes or HIV, which makes them vulnerable to severe forms of COVID-19.[11]  Mr. Marshall is one of these persons because he has HIV.  (DE 7, p. 3.)

HIV is a virus that kills the cells that help the body fight infections.  Once the immune system is compromised, a person develops AIDS (acquired immune deficiency syndrome).  https://www.giantmicrobes.com/us/products/hiv.html Specifically, HIV destroys CD4+ cells, which are critical to a person's immune system. CD4+ cells are responsible for keeping a person from succumbing common diseases and infections.  https://www.healthline.com/health/hiv-aids/effects-on-body#1

According to public health experts, incarcerated individuals "are at special risk of infection, given their living situations," and "may also be less able to participate in proactive measures to keep themselves safe;" "infection control is challenging in these settings."[12]  Outbreaks of the flu regularly occur in jails, and during the H1N1 epidemic in 2009, many jails and prisons dealt with high numbers of cases.[13]  In China, officials have confirmed the coronavirus spreading at a rapid

---

[10] Laura M. Maruschak et al. (2015). Medical Problems of State and Federal Prisoners and Jail Inmates, 2011-12. NCJ 248491. Washington, D.C.: U.S. Department of Justice, Bureau of Justice Statistics, *at* https://www.bjs.gov/content/pub/pdf/mpsfpji1112.pdf

[11]  https://www.theguardian.com/us-news/2020/mar/13/coronavirus-us-prisons-jails

[12]  "Achieving A Fair And Effective COVID-19 Response: An Open Letter to Vice-President Mike Pence, and Other Federal, State, and Local Leaders from Public Health and Legal Experts in the United States," (March 2, 2020), *at* https://bit.ly/2W9V6oS.

[13]  *Prisons and Jails are Vulnerable to COVID-19 Outbreaks*, The Verge (Mar. 7, 2020) *at* https://bit.ly/2TNcNZY.

pace in Chinese prisons, counting 500 cases.[14] Secretary of State Mike Pompeo has called for Iran to release Americans detained there because of the "deeply troubling" "[r]eports that COVID-19 has spread to Iranian prisons," noting that "[t]heir detention amid increasingly deteriorating conditions defies basic human decency."[15] Courts across Iran have granted 54,000 inmates furlough as part of the measures to contain coronavirus across the country.[16] Brooklyn District Attorney Eric Gonzalez, joined by public health experts, has asked Governor Cuomo to grant emergency clemencies to vulnerable prisoners including elderly and sick prisoners.[17]

### *Specific Conditions at the St. Joseph County Jail*

The St. Joseph County Jail houses approximately 600 inmates. https://www.southbendtribune.com/news/publicsafety/st-joseph-county-jail-absorbs-state-prisoners-without-more-money/article_999bd148-55a9-11e7-995f-8bb221700579.html  To date, it appears that the St. Joseph County Jail has not met even the most basic recommendations of the CDC for preventing the spread of the coronavirus.  Staff are not wearing face masks or gloves.  The facility has not distributed antiseptic wipes, hand sanitizer, or even free soap to the inmates there.

---

[14] Rhea Mahbubani, *Chinese Jails Have Become Hotbeds of Coronavirus As More Than 500 Cases Have Erupted, Prompting the Ouster of Several Officials*, Business Insider (Feb. 21, 2020) *at* https://bit.ly/2vSzSRT.
[15] Jennifer Hansler and Kylie Atwood, *Pompeo calls for humanitarian release of wrongfully detained Americans in Iran amid coronavirus outbreak*, CNN (Mar. 10, 2020) *at* https://cnn.it/2W4OpV7.
[16] Claudia Lauer and Colleen Long, *US Prisons, Jails On Alert for Spread of Coronavirus*, The Associated Press (Mar. 7, 2020) *at* https://apnews.com/af98b0a38aaabedbcb059092db356697.
[17] Sarah Lustbader, *Coronavirus: Sentenced to COVID-19*, The Daily Appeal (Mar. 12, 2020) *at* https://theappeal.org/sentenced-to-covid-19/.

The facility does not have any testing for COVID-19 available, and does not know when, if ever, it will have the tests.

As additional people are arrested who have been out in the community as the coronavirus spreads, if they are not symptomatic, they will be brought into the St. Joseph County Jail, and held with the existing population, potentially bringing COVID-19 into this population held in large numbers, close quarters, and low sanitary conditions. The St. Joseph County Jail has limited provisions for remote access should a quarantine be necessary for all 600 inmates.

### The Bail Reform Act Requires Sven Marshall's Release

A "judicial officer may, by subsequent order, permit the temporary release of the person, in the custody of a United States marshal or another appropriate person, to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason." 18 U.S.C. § 3142(i). The circumstances that existed when Sven Marshall was ordered detained have now changed. There is a pandemic that poses a direct risk to Sven Marshall that is far greater if he continues to be detained during this public health crisis. Sven Marshall is vulnerable because he is 62 ½ years old. (DE 9, p. 2.)

As an initial matter, the Bail Reform Act requires that a court should "bear in mind that it is only a 'limited group of offenders' who should be denied bail pending trial." *United States v. Shakur*, 817 F.2d 189, 195 (2d Cir. 1987) (quoting

6

S. Rep. No. 98-225 at 7, as reprinted in 1984 U.S.C.CA.N. 3182, 3189); *see United States v. Salerno*, 481 U.S. 739, 755 (1987) (suggesting that "detention prior to trial or without trial is the carefully limited exception" to liberty before trial). A single individual unnecessarily detained before trial is one individual too many, and the increasing use of the practice places tremendous wear on our constitutional system. *United States v. Montalvo-Murillo*, 495 U.S. 711, 723–24 (1990) (Stevens, J., dissenting, joined by Brennan and Marshall, JJ.). Due to the crucial interests involved, it follows that a "case-by-case" approach is required at any stage of the case in assessing the propriety of pretrial detention. *See United States v. Gonzales Claudio*, 806 F.2d 334, 340 (2d Cir. 1986) (discussing due process analysis for evaluating propriety of prolonged pretrial detention, and the interests at stake) (citations omitted), *cert. dismissed sub nom.*, *Melendez-Carrion v. United States*, 479 U.S. 978 (1986).

The courts have long recognized that there is no greater necessity than keeping a defendant alive, no matter the charge. As Judge Weinstein held, "We do not punish those who have not been proven guilty. When we do punish, we do not act cruelly. Continued incarceration of this terminally ill defendant threatens both of these fundamental characteristics of our democracy." *United States v. Scarpa*, 815 F.Supp.88 (E.D.N.Y. 1993) (pretrial defendant with AIDS facing murder charges released on bail because of the "unacceptably high risk of infection and death on a daily basis inside the MCC"). *See also United States v. Adams*, No. 6:19-mj-00087-MK, 2019 WL 3037042 (D. Or. July 10, 2019) (defendant charged with

7

violation of the Mann Act and possession of child pornography and suffering from diabetes, heart conditions and open sores released on home detention because of his medical conditions); *United States v. Johnston*, No. 17-00046 (RMM) 2017 WL 4277140 (D.D.C. Sept. 27, 2017) (defendant charged with violation of the Mann Act and in need of colon surgery released to custody of his wife for 21 days); *United States v. Cordero Caraballo*, 185 F. Supp. 2d 143 (D.P.R. 2002) (badly wounded defendant released to custody of his relatives).

This Court should consider the "total harm and benefits to prisoner and society" that continued presentencing detention of Sven Marshall will yield, relative to the heightened health risks posed to Sven Marshall during this rapidly expanding and increasingly serious pandemic and national emergency. *See United States v. D.W.*, 198 F. Supp. 3d 18, 23 (E.D.N.Y. 2016); *Davis v. Ayala,* 135 S. Ct. 2187, 2209 (2015) (Kennedy, J., concurring) (calling for heightened judicial scrutiny of the projected impact of jail and prison conditions on a defendant); *United States v. Mateo,* 299 F. Supp. 2d 201, 212 (S.D.N.Y. 2004) (reducing sentence where defendant's pretrial conditions were "qualitatively more severe in kind and degree than the prospect of such experiences reasonably foreseeable in the ordinary case"); *United States v. Francis*, 129 F. Supp. 2d 612, 619-20 (S.D.N.Y. 2001) (reducing sentence in acknowledgment of "the qualitatively different, substandard conditions to which the Defendant was subjected" in pretrial detention).

8

**Conditions of Release Are Available That Allow Sven Marshall To Be Treated Humanely While Also Ameliorating Any Danger To The Community**

From Sven Marshall's perspective his life is on the line, creating a powerful incentive to abide by any release conditions the Court may impose and changing the calculus that initially led to the denial of bail in this case. There is little chance that the defendant will flee given his age and that fact that he has pleaded guilty in his case and is simply awaiting sentencing. (His release would also facilitate his review of original records in the government's possession, see DE 77.)

Critically, during this temporary release, Mr. Marshall will not be left to his own devices, but will be supported and monitored by Pretrial Services and supported by his mother, Mrs. Marshall. Since 2009, Pretrial Services' data has found that only 2.9% of defendants in the highest risk category were re-arrested for a violent crime while on release.[18] In the Eastern District of New York, Chief U.S. Pretrial Services Officer Roberto Cordeiro reports that in Fiscal Year 2019, only six of 1,300 defendants (0.5%) under Pretrial Services' supervision failed to appear in court; only 2.8% were rearrested. The elderly and chronically ill, no matter what crime they are accused of, pose a lower risk of violating supervision, particularly during a global pandemic during which even leaving the house will endanger their lives.

---

[18] Thomas H. Cohen, Christopher T. Lowenkamp, and William E. Hicks, *Revalidating the Federal Pretrial Risk Assessment Instrument (PTRA): A Research Summary* (September 2018) *at* https://www.uscourts.gov/sites/default/files/82_2_3_0.pdf.

Moreover, the defendant is willing to accept any pretrial release condition including house arrest and/or GPS location monitoring. The defendant could now live with mother at her house in South Bend, Indiana if released. His mother is Annegret Marshall. (DE 9, p. 1.)

## Conclusion

Sven Marshall is among the vulnerable population at heightened risk of getting very sick and possibly dying from this deadly pandemic virus. For all of the above reasons, Sven Marshall should be granted release on bond and other conditions.

WHEREFORE, the defendant requests that he be released as soon as possible on any conditions of release in order to protect his life from the coronavirus.

Dated: March 13, 2020

Respectfully submitted,

/s/  *Donald J. Schmid*
_____
Donald J. Schmid
Attorney for Defendant S. Eric Marshall

Law Offices of Donald J. Schmid
1251 N. Eddy St., Suite 200
South Bend, Indiana 46617
Tel. no.: 574-993-2280
schmid@donaldschmidlaw.com