UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

UNITED STATES OF AMERICA

v.

SVEN ERIC MARSHALL

Case No. 3:18-CR-138 JD

# OPINION AND ORDER

After the Court ruled on the parties' objections to the presentence report (DE 161), Defendant Sven Eric Marshall filed a motion asking the Court to reconsider applying the 2-level sophisticated means enhancement under United States Sentencing Guidelines § 2B1.1(b)(10)(C). (DE 166.) Mr. Marshall believes that the enhancement is based on a legal error and factual misunderstanding of his offense conduct. In addition, he argues that the Government's insistence on a sophisticated means enhancement is inconsistent with its position in another case in this district, *United States v. Nordan*, 1:19-CR-100 DRL (N.D. Ind. 2021), where the government sought no such enhancement. For the reasons explained, the Court will deny Mr. Marshall's motion to reconsider.[1]

In ruling that the sophisticated means enhancement applies to Mr. Marshall, among other things, the Court stated as follows:

> Mr. Marshall's offense conduct falls squarely within [§ 2B1.1(b)(10)(C)], as it involved a "greater level of planning or concealment than a typical fraud of its kind." *United States v. Green*, 648 F.3d 569, 576 (7th Cir. 2011). Mr. Marshall did not simply solicit investment money and run with it. Instead, he ran a Ponzi scheme, taking money from investors for his own use and covering up that fact with the money from subsequent investors, thus creating the appearance that all was well with their money, TIAS, and Mr. Marshall. *Cf. United States v. Beckman*, 787 F.3d 466, 496 (8th Cir. 2015) (finding that Ponzi scheme was by nature obviously

---

[1] The underlying facts and applicable law can be found in the Court's previous order (DE 161) and will not be restated here.

complex). He created hundreds of fraudulent TIAS business documents purportedly showing stable investments; *produced false 1099 tax forms; filed false tax returns* for his investment clients; and moved money around *dozens of accounts* in order to fund payments when they became due. This activity falls within the sophisticated means enhancement under the guidelines. *Cf. United States v. Landwer*, 640 F.3d 769, 771 (7th Cir. 2011) (upholding district court's finding of a sophisticated scheme where, for seven years, the defendant "created phony documents to conceal fraudulent transactions from victims and authorities, used complex real-estate instruments to scam victims out of property, liquidated clients' investment funds for his own use and channeled the proceeds in a manner that covered up his theft, and sent trumped-up letters to clients falsely reassuring them that their investments were safe").

(DE 161 at 8 (emphasis added to highlight the statements Mr. Marshall is challenging in his motion to reconsider).)

Mr. Marshall insists that producing 1099 tax forms and filing tax returns on what was imaginary interest income for some of the clients didn't reflect sophisticated means designed to cover up his crimes. He relies on 26 C.F.R. § 1.451-2(a) which explains that "[i]ncome although not actually reduced to a taxpayer's possession is constructively received by him in the taxable year during which it is credited to his account, set apart for him, or otherwise made available so that he may draw upon it at any time, or so that he could have drawn upon it during the taxable year if notice of intention to withdraw had been given." Mr. Marshall argues that he was obligated by law to report to the Internal Revenue Service his clients' purported interest earnings on their investments as income, which, according to him, proves that he was not using sophisticated means to carry out or conceal his crimes. Mr. Marshall also relies on *Wright v. Commissioner*, Docket No. 5244-88, 1989 Tax Ct. Memo LEXIS 555 (T.C. Oct 11, 1989), a tax court case, which held that a petitioner constructively received income in the year in which the investment accrued, not the year in which the petitioner liquidated the investment, even though the accrued investment was the result of a Ponzi scheme.

Mr. Marshall misunderstands the reasons for the Court's finding that he utilized sophisticated means. While it is true, as Mr. Marshall points out, that some of the investors chose and received monthly interest payments, many others elected to roll over their interest amounts. As to this latter group, his creation of 1099 tax forms and his filing of tax returns on the purportedly accrued interest, whether legally required or not, was a fiction –fraud, to be exact. The reported interest did not exist, that is, it was not "made available so that [the investors] may draw upon it at any time." 26 C.F.R. § 1.451-2(a). Rather, Mr. Marshall had stolen the investors' money, which resulted in the money being unavailable for withdrawal. In fact, as Ponzi schemes do, his scheme also came to a crashing end because the new money dried up and could not be withdrawn by older investors. Therefore, the creation of 1099 forms and resulting tax returns perpetuated the lie that the investments were safe at TIAS and were earning interest. Such illusory compliance with the law "shows a greater level of planning or concealment than a typical fraud of its kind." *United States v. Green*, 648 F.3d 569, 576 (7th Cir. 2011) (quoting *United States v. Landwer*, 640 F.3d 769, 771 (7th Cir. 2011)).

As the Government points out, victim F.R.'s case is illustrative. Mr. Marshall prepared F.R.'s interest income statements as well as her taxes. In April 2012, F.R. invested $90,000 with TIAS. (DE 139-12 at 26.) This money was used to pay other investors. (*Id*. at 26.) By November 2012, F.R.'s investment was gone (*Id*. at 27), yet Mr. Marshall kept preparing 1099 forms and tax returns on the fictitious interest for F.R. each year after 2012. This is entirely different from the circumstances in the *Wright* case. There, the Court was asked to consider how to categorize certain income received by the petitioners, who were not victims and who had received the full amount of their investments and interest before the Ponzi scheme was discovered. The tax court concluded that the petitioners had constructive income, noting that they had not asserted any

substantial limitations or restrictions on their ability to withdraw funds. "Upon these facts, where and how [the schemers] got the funds to pay petitioners is immaterial." *Wright*, 1989 Tax Ct. Memo LEXIS 555 at *5. This is in contrast with many of Mr. Marshall's investment victims who did have substantial limitations to withdraw their funds. Accordingly, Mr. Marshall's argument does not persuade the Court to reconsider its ruling on the sophisticated means enhancement. Moreover, as explained below and in the Court's order (DE 161), the enhancement does not solely rely on the production of these tax documents.

Mr. Marshall argues that the Court was misled by the Government into believing that Mr. Marshall had "dozens of bank accounts" to move money around so as to cover his tracks. But in its Order (DE 161), the Court was not referring only to bank accounts, but rather all accounts—including the investors' accounts—through which money was moved for fourteen years to keep TIAS afloat. Indeed, as the Government notes in its response (DE 169), there were numerous accounts associated with Mr. Marshall's victims as well as those associated with TIAS. Nevertheless, to avoid any confusion, the Court clarifies that Mr. Marshall's scheme, as it pertains to his counts of conviction, involved monetary transfers between numerous accounts controlled by Mr. Marshall and involving the funds of his many victims.

Finally, Mr. Marshall submits that the Government is seeking the sophisticated means enhancement against him even though it did not seek the same enhancement in a recent case in this district, *United States v. Nordan*, Case No. 1:19-CV-100 DLR. In that case, Brian Nordan embezzled more than $3 million from his employer and pleaded guilty to wire fraud under 18 U.S.C. § 1343. Although the court observed in its sentencing memorandum that Mr. Nordan's schemes "were multifaceted and sophisticated—seemingly callous and calculated," no sophisticated means enhancement was applied to him. According to Mr. Marshall, "if the Nordan

fraud did not involve sophisticated means—even when it was 'multifaceted and sophisticated,' then Mr. Marshall's fraud certainly did not involve sophisticated means for purposes of the Guidelines." (Def.'s M. Reconsider, DE 166 at 6.)

Mr. Marshall's argument does not convince the Court that the sophisticated means enhancement is inapplicable to him. As explained in the Court's earlier Order (DE 161) and reiterated here, Mr. Marshall's conduct was sophisticated because it displayed a greater level of concealment than a typical fraud of its kind. *Green*, 648 F.3d at 576. The *Nordan* case is not comparable to Mr. Marshall because it did not involve the same facts. Rather, Mr. Nordan embezzled money from his employer and unlike Mr. Marshall, he did not run a Ponzi scheme to defraud vulnerable investors; he did not mail hundreds of fraudulent business documents to his victims; he did not create tax documents premised on illusory income; and he did not make fraudulent misrepresentations to financial institutions as a fiduciary of other people's investments. Yet, Mr. Marshall did all these things, making the sophisticated means enhancement applicable to him. Given the differences in their conduct, there's no disparity between Mr. Marshall and Mr. Nordan. *Cf. United States v. Sanchez*, 989 F.3d 523, 539 (7th Cir. 2021) ("Section 3553(a)(6) mandates that, when imposing a sentence, the district court must consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.")

For these reasons, the Court DENIES Mr. Marshall's motion to reconsider (DE 166). The Court will contact counsel to schedule the sentencing hearing for a mutually convenient time.

SO ORDERED.

ENTERED: April 22, 2022

/s/ JON E. DEGUILIO  
Chief Judge  
United States District Court